IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| RICHARD LEE BROWN | : | CIVIL ACTION NO.: |
|  | : | COMPLAINT |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| ALEX AZAR, | : |  |
| IN HIS OFFICIAL CAPACITY | : |  |
| AS SECRETARY | : |  |
| U.S. DEPARTMENT OF | : |  |
| HEALTH AND HUMAN SERVICES | : |  |
|  | : |  |
| & | : |  |
|  | : |  |
| U.S. DEPARTMENT OF | : |  |
| HEALTH AND HUMAN SERVICES | : |  |
|  | : |  |
| & | : |  |
|  | : |  |
| NINA B. WITKOFSKY, | : |  |
| IN HER OFFICIAL CAPACITY AS | : |  |
| ACTING CHIEF OF STAFF | : |  |
| U.S. CENTERS FOR DISEASE | : |  |
| CONTROL AND PREVENTION, | : |  |
|  | : |  |
| & | : |  |
|  | : |  |
| U.S. CENTERS FOR DISEASE | : |  |
| CONTROL AND PREVENTION, | : |  |
|  | : |  |
| Defendants. | : |  |

## **COMPLAINT**

When Plaintiff, Richard Lee (Rick) Brown, rented the property at issue, he expected that his tenant would uphold her end of the contract and pay her rent. He also expected, if she did not, that he could resort to the court system to evict his tenant so that he could regain possession of his property and let it to a tenant who would pay rent.

Mr. Brown upheld his end of the bargain. He provided a habitable home to his tenant and continues to pay for maintenance, utilities and other expenses. When Mr. Brown's tenant breached her agreement, he should have been able to follow the lawful process laid down by the Virginia General Assembly for retaking possession of his home.

Mr. Brown failed to anticipate, however that the U.S. Centers for Disease Control, a federal agency, would issue a sweeping unilateral order suspending *state* law under the flimsy premise that doing so was "necessary" to control the COVID-19 pandemic. CDC's actions are not authorized by statute or regulation. But even if they were, they are unprecedented in our history and are an affront to core constitutional limits on federal power. If allowed, the order would abrogate the right to access the courts, violate limits on the Supremacy Clause, implicate the non-delegation doctrine, and traduce anti-commandeering principles. CDC's effort to seize control of state law on such an insupportable basis must be rejected.

2

## PARTIES

1.      Plaintiff Richard Lee (Rick) Brown is a natural person and a resident of the Commonwealth of Virginia.

2.      Defendant Secretary Alex Azar is the agency head of the U.S. Department of Health and Human Services (HHS) and is sued in his official capacity.

3.      Defendant HHS is an agency of the United States.

4.      Defendant Nina B. Witkofsky is the Acting Chief of Staff for the Centers for Disease Control and Prevention (CDC) and is the agency head responsible for the challenged agency action. She is sued in her official capacity.

5.      Defendant CDC is an agency of the United States located within HHS and headquartered in Atlanta, Georgia.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

7.      This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) because the defendants reside in this judicial district and because a

substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

9.    Plaintiff Rick Brown owns a residential property at 325 Highland Ave. Winchester, VA 22601 ("the property").

10.    Mr. Brown has a mortgage on the property and makes monthly payments of approximately $400 for the mortgage principal, interest and taxes.

11.    On April 1, 2017, Mr. Brown leased the property to a tenant, who agreed to pay monthly rent of $925.

12.    The lease automatically renewed several times and is currently in effect.

13.    The tenant of Mr. Brown's property has fallen behind on rent, and asserted to Mr. Brown that she is unable to pay because of economic stress arising from the COVID-19 pandemic, has used best efforts to obtain available government assistance and otherwise pay rent, has no other home to go to, and is making less than $99,000 annually.

14.    To date, the tenant owes $8,092 in unpaid rent, and has made no payments at all to Mr. Brown for several months.

15.    On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-316, which included in Section 4024 a

limited and temporary moratorium on evictions for certain types of federally-backed housing that expired on July 24, 2020.

16.     On August 7, 2020, a majority of the Supreme Court of Virginia issued an order, at the request of Virginia Governor Ralph Northam, modifying and extending a declaration of judicial emergency in response to COVID-19. *In re: Amendment of Eighth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency* (Va. Aug. 7, 2020) *available at* http://www.vacourts.gov/news/items/covid/2020_0807_scv_amendment_to_eighth_order.pdf. (August 7 Order).

17.     The order provided that from August 10, 2020 through September 7, 2020 "the issuance of writs of eviction pursuant to unlawful detainer actions is suspended and continued. However, this suspension and continuation shall not apply to writs of eviction in unlawful detainer actions that are unrelated to the failure to pay rent." *Id*. at 2.

18.     On September 1, 2020, Defendant Acting Chief Witkofsky issued an order titled, "*Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19*."

19.     The order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020), *available at* https://www.govinfo.gov/content/pkg/FR-2020-09-04/pdf/2020-19654.pdf.

20.     The order provided, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id*.

21.     The order was not effective so long as a local jurisdiction applied similar eviction restrictions. *Id*.

22.     The order said, "'Evict' and 'Eviction' means any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. This does not include foreclosure on a home mortgage." *Id*. at 55293.

23.     The order also said, "[A] person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both[.]" *Id*. at 55296.

24.     The order was effective upon publication until December 31, 2020, "unless extended." *Id*. at 55297.

25.     Mr. Brown has maintained the property in compliance with all legal obligations as a landlord, and the tenant has no other defense to her nonpayment of rent.

26.    Mr. Brown is entitled to a writ of possession and a writ of eviction.

27.    On August 18, 2020, Mr. Brown attempted to have the Winchester City

Sheriff's Department serve a five-day termination notice pursuant to Va. Code §

55.1-1245(f) to the tenant.

28.    Sheriff Les Taylor informed Mr. Brown that the Winchester City Sheriff's

Department would no longer issue and serve such notices in compliance with the

Supreme Court of Virginia's order.

29.    Because of operation of the Supreme Court of Virginia's August 7 Order,

Mr. Brown was unable to obtain a writ of eviction to oust the tenant for

nonpayment of rent until September 7, 2020.

30.    Mr. Brown now intends to seek eviction of his tenant for nonpayment of rent

using legal process in Virginia state courts.

31.    Upon information and belief, Mr. Brown's tenant is a "covered person"

under CDC's Order.

32.    Mr. Brown intends to violate CDC's order through lawful processes under

Virginia law by seeking an eviction order, and having a sheriff forcibly remove his

tenant from the property.

33.    Mr. Brown intends to violate CDC's order even if his tenant presents an

attestation in eviction proceedings that she is a "covered person" as defined in

CDC's order.

34.    Mr. Brown continues to provide habitable premises to the tenant, and his tenant has no other defense to eviction under Virginia law.

35.    Because of the CDC order, Mr. Brown suffers significant economic damages, including $8,092 in unpaid rent, as well as monthly maintenance costs, damages to his property and the lost opportunity to rent or use the property at fair market value of at least $925 per month.

36.    The tenant is also likely insolvent (and judgment proof), and Mr. Brown will be unlikely to obtain any economic relief or damages from the tenant once the CDC order expires at the end of December.

37.    Mr. Brown's only opportunity to mitigate his loss will be from ousting the tenant who is in wrongful possession of the premises.

### COUNT I: UNLAWFUL AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(2)(B),(C)—CDC EXCEEDED ITS STATUTORY AND REGULATORY AUTHORITY BY ISSUING THE HALT IN RESIDENTIAL EVICTIONS ORDER

38.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

39.    Under the Administrative Procedure Act, this Court is authorized to hold unlawful and set aside agency action, findings, and conclusions that it finds to be contrary to constitutional right or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. *See* 5 U.S.C. §§ 706(2)(B), (C).

8

40.    The Order was purportedly issued under the authority of "Section 361 of the

Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2."

41.    Under 42 U.S.C. § 264(a) the CDC may only "make and enforce such

regulations" that "are necessary to prevent the introduction, transmission, or

spread of communicable diseases from foreign countries into the States or

possessions, or from one State or possession into any other State or possession"

and "may provide for such inspection, fumigation, disinfection, sanitation, pest

extermination, destruction of animals or articles found to be so infected or

contaminated as to be sources of dangerous infection to human beings, and other

measures, as in his judgment may be necessary" to carry out and enforce such

regulations.

42.    Under 42 C.F.R. § 70.2, when the Director of the CDC "determines that the

measures taken by health authorities of any State or possession (including political

subdivisions thereof) are insufficient to prevent the spread of any of the

communicable diseases from such State or possession to any other State or

possession" the Director is authorized to "take such measures to prevent such

spread of the diseases as he/she deems reasonably necessary, including inspection,

fumigation, disinfection, sanitation, pest extermination, and destruction of animals

or articles believed to be sources of infection."

43.    The Order purports to restrict "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from "evict[ing] any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." 85 Fed. Reg. at 55292. A "covered person" is "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating" certain information outlined in the Order. 85 Fed. Reg. at 55293; see also 85 Fed. Reg. at 55297 (CDC Declaration form). The effective period of the Order is from September 4, 2020 through December 31, 2020. 85 Fed. Reg. at 55292.

44.    The Order only applies to States, local, territorial, or tribal areas that do not have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.

45.    The Order baldly states that Defendant Witkofsky "determined the temporary halt in evictions in this Order constitutes a reasonably necessary measure under 42 CFR 70.2 to prevent the further spread of COVID-19 throughout the United States." 85 Fed. Reg. at 55296. The Order further states that she "determined that measures by states, localities, or U.S. territories that do not

10

meet or exceed these minimum protections [i.e., those that have residential eviction moratoria] are insufficient to prevent the interstate spread of COVID-19." 85 Fed. Reg. at 55296.

46.   The Order does not identify or offer any analysis whatsoever about which States, local, territorial, or tribal areas have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.

47.   Individuals or organizations that violate the Order are subject to criminal penalties, including fines and jail time. *See* 85 Fed. Reg. at 55296; *see also* 18 U.S.C. §§ 3559, 3571; 42 U.S.C. § 271; 42 C.F.R. § 70.18.

48.   Agencies have no inherent power to make law. *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("the lawmaking function belongs to Congress … and may not be conveyed to another branch or entity."). This limitation is a constitutional barrier to an exercise of legislative power by the executive branch. Agencies have "no power to act … unless and until Congress confers power upon [them]." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

49.   Nothing in the relevant statutes or regulations purports to give CDC the power or authority to issue an eviction-moratorium order.

50.   Nothing in the relevant statutes or regulations purports to give CDC the power or authority to criminalize otherwise lawful behavior.

51.    The Order was issued in excess of any statutory authority and is therefore invalid.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order and any other relief that may be appropriate.

### COUNT II: VIOLATION OF THE RIGHT OF ACCESS TO COURTS UNDER THE U.S. CONSTITUTION—THE ORDER UNLAWFULLY DENIED MR. BROWN ACCESS TO THE ONLY LAWFUL MEANS OF EVICTING A DELINQUENT TENANT

52.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

53.    The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth and Fourteenth Amendment Due Process Clauses and the Fourteenth Amendment's Equal Protection Clause collectively provide a federal constitutional right of access to courts. *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n. 12 (2002).

54.    No state actor may systemically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief. *Id*. at 413.

55.    An unlawful detainer action is a landlord's *sole* means of reacquiring possession of his residential property in Virginia. A sheriff must enforce a writ of eviction. *See* Va. Code § 8.01-470 (writs of eviction generally). A residential landlord is forbidden from taking possession of his own property. Va. Code § 55.1-

1252. Instead, "[i]f a landlord unlawfully removes or excludes a tenant from the premises … the *tenant* may obtain an order from a general district court to recover possession, require the landlord to resume any such interrupted essential service, or terminate the rental agreement and, in any case, recover the actual damages sustained by him and reasonable attorney fees." Va. Code. § 55.1-1243(a).

56.    Plaintiff is entitled to obtain a writ of eviction pursuant to Virginia law for the nonpayment of rent at 325 Highland Ave. Winchester, VA 22601.

57.    The tenant currently owes $8092 in unpaid rent and has no defenses other than the CDC order to an unlawful detainer proceeding.

58.    By operation of the order, Plaintiff is unable to obtain a writ of eviction pursuant to an unlawful detainer action.

59.    Plaintiff has no ability to legally oust his tenant for nonpayment of rent.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order and any other relief that may be appropriate.

## COUNT III: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE—THE CDC EVICTION-MORATORIUM ORDER CANNOT BE THE SUPREME LAW OF THE LAND BECAUSE IT IS NOT A LAW ADOPTED PURSUANT TO THE CONSTITUTION

60.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

61.     Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

62.     The Supremacy Clause grants "supreme" status only to the "*Laws* of the United States." *Id.* (emphasis added).

63.     "[A]n agency literally has no power to act, let alone to pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *New York v. FERC*, 535 U.S. 1, 18 (2002).

64.     "[P]reemption takes place only when and if the agency is acting within the scope of its congressionally delegated authority." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

65.     The Supremacy Clause grants "supreme" status only to the "Laws of the United States which shall be made *in Pursuance thereof*," *i.e.* in pursuance of "This Constitution." U.S. Const. Art. VI, cl. 2 (emphasis added).

66.     The conditional nature of the Supremacy Clause accords supremacy to federal statutes or regulations made "in Pursuance of" the Constitution.

14

67.    CDC has not identified any act of Congress that confers upon it the power to impose a halt on residential evictions.

68.    CDC has not identified any act of Congress that shows it is acting within the scope of some congressionally delegated authority to impose eviction moratoriums across the United States.

69.    Indeed, Section 4024 of the CARES Act, which imposed a temporary moratorium on certain evictions, contained no delegation of authority to any agency, much less CDC, and even then only applied to certain federally-backed housing.

70.    The weaker the link between relevant federal statutes and CDC's eviction-moratorium order, the weaker is CDC's ability to invoke the Supremacy Clause to deprive Plaintiff of his right to state-court eviction process.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order and any other relief that may be appropriate.

### COUNT IV: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE AND TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER DOES NOT VALIDLY PREEMPT STATE LAW

71.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

72.    Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance

thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

73.    The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

74.    The relevant statute, 42 U.S.C. § 264(a), only authorizes CDC to make and enforce regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

75.    The relevant regulation, 42 C.F.R. § 70.2, also only authorizes CDC to "take measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

76.    Nothing in the relevant statutes or regulations purports to give CDC the authority to issue an eviction-moratorium order that preempts state landlord-tenant law.

77.    Nothing in the relevant statutes or regulations purports to give CDC the
authority to preempt the Contracts Clause of Article I, Section 10 of the United
States Constitution, the Contracts Clauses of the state constitutions, or otherwise
preempt state law protecting from impairment the obligations of private contracts
that are in force.

78.    Nothing in the relevant statutes or regulations gives CDC the authority to
order a nationwide moratorium "to temporarily halt residential evictions to prevent
the further spread of COVID-19," CDC Order, 85 Fed. Reg. at 55292, because
CDC's authority is confined to undertaking measures providing for "inspection,
fumigation, disinfection, sanitation, pest extermination, destruction of animals or
articles found to be so infected or contaminated as to be sources of dangerous
infection to human beings." 42 U.S.C. § 264(a); 42 C.F.R. § 70.2.

79.    Although "state laws can be pre-empted by federal regulations as well as by
federal statutes," *Hillsborough County, Fla. v. Automated Medical Lab, Inc.*, 471
U.S. 707, 713 (1985), the relevant statute contains a savings clause, which states:
"Nothing in this section or section 266 of this title, or the regulations promulgated
under such sections, may be construed as superseding any provision under State
law (including regulations and including provisions established by political
subdivisions of States), except to the extent that such a provision conflicts with an

exercise of Federal authority under this section or section 266 of this title." 42 U.S.C. § 264(e).

80.   The savings clause of 42 U.S.C. § 264(e) states that 42 U.S.C. § 264(a) and 42 C.F.R. § 70.2 cannot "be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States)." In other words, the CDC is statutorily expressly deauthorized from issuing orders such as the eviction-moratorium order that would supersede state landlord-tenant law, or state laws relating to non-impairment of contracts.

81.   The relevant state landlord-tenant laws and laws relating to non-impairment of contracts do not conflict with CDC's authority to regulate "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a).

82.   Landlord-tenant law and law relating to non-impairment of contracts "has long been regarded as a virtually exclusive province of the States" under the Tenth Amendment upon which the federal government cannot intrude. *Sosna v. Iowa*, 419 U.S. 393, 404 (1975). The CDC order displaces inherent state authority over residential evictions and therefore violates the Tenth Amendment.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's

eviction-moratorium order and any other relief that may be appropriate.

### COUNT V: VIOLATION OF U.S. CONSTITUTION'S TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER UNCONSTITUTIONALLY COMMANDEERS STATE RESOURCES AND STATE OFFICERS TO ACHIEVE FEDERAL POLICY OBJECTVES OR EXECUTE FEDERAL LAWS

83.    Plaintiff incorporates by reference all of the preceding material as though

fully set forth herein.

84.    The Tenth Amendment to the United States Constitution provides: "The

powers not delegated to the United States by the Constitution, nor prohibited by it

to the States, are reserved to the States respectively, or to the people."

85.    Under the Tenth Amendment and the anti-commandeering doctrine, CDC

cannot commandeer state resources to achieve federal policy objectives or

commandeer state officers to execute federal laws. CDC's eviction-moratorium

order impermissibly commandeers state courts and state officers to act as arms of

CDC. CDC's eviction-moratorium order impermissibly commandeers state courts

and state officers to apply, enforce, and implement an unconstitutional federal law.

*New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S.

898 (1997).

86.    CDC cannot order state courts and relevant state actors not to process

summary evictions. A landlord, like the Plaintiff, who relies on state process, runs

the risk of a federal prosecution for doing so. Plaintiff runs the risk of being fined up to $100,000 and sentenced to one year in prison for invoking and utilizing relevant state laws. *See* CDC Order, 85 Fed. Reg. at 55296.

87.    Neither Congress nor CDC can "compel the States to … administer a federal regulatory program." *New York v. United States*, 504 U.S. at 188. Neither Congress nor CDC can "halt" pending or forthcoming state adjudicatory proceedings. CDC Order, 85 Fed. Reg. at 55296. Neither Congress nor CDC can modify state judicial processes by dictating that a declaration executed by a tenant shall be adequate proof or otherwise suffice to halt or suspend the judicial eviction action. *Id.* at 55292–93, 55297.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order and any other relief that may be appropriate.

### COUNT VI: VIOLATION OF U.S. CONSTITUTION ART I, § 1—THE CDC ORDER IS AN INVALID EXERCISE OF LEGISLATIVE POWER

88.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

89.    Article I, § 1 of the U.S. Constitution states, "*All* legislative Powers herein granted shall be vested in a Congress of the United States." (Emphasis added.) The grant of "[a]ll legislative Powers" to Congress in the Vesting Clause means

that Congress may not divest "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. 1, 42-43 (1825).

90.    Whether federal legislation effects a permissible or prohibited delegation of legislative powers—and thus violates the Article I, § 1 Vesting Clause—is determined based on whether the legislation provides "an intelligible principle" to which an administering agency is directed to conform when carrying out its functions under the legislation. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). If the law fails to provide a guiding principle of that sort but instead delegates to the agency authority to establish its own policies, the legislation is invalid because it violates the Vesting Clause. *Id*.

91.    As interpreted by CDC, 42 U.S.C. § 264(a) fails to set forth any "intelligible principle" to which CDC is directed to conform. Citing § 264(a), the Order imposes a nationwide moratorium on residential evictions based on CDC's judgment that a moratorium is necessary to curb "the introduction, transmission, or spread of communicable diseases." But if that finding is sufficient to justify the moratorium, then § 264(a) imposes no discernible limits on CDC's regulatory authority.

92.    Alternatively, if § 264(a) supplies a sufficient intelligible principle under current interpretation, then the doctrine must be re-examined so as to adhere to the proper limits contained in the Vesting Clause of Article I, § 1.

21

93.    As interpreted by the Order, § 264(a) would also authorize CDC to prohibit all citizens from attending church services, assembling for the purpose of expressing their political views, or even leaving their own homes. It is debatable whether such measures could pass constitutional muster if adopted by Congress itself; but it is beyond dispute that such measures constitute the sorts of policy decisions that the Constitution reserves to Congress alone in its role as the Nation's exclusive repository of legislative power.

94.    Because § 264(a), as interpreted by CDC, fails to include an intelligible principle that imposes limits on CDC's alleged regulatory authority, § 264(a) violates the Article I, § 1 Vesting Clause and is thus invalid as applied.

95.    Because § 264(a) is unconstitutional as applied here, CDC lacks any statutory authority to adopt the Order.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order and any other relief that may be appropriate.

## COUNT VII: UNLAWFUL SUSPENSION OF LAW—NEITHER STATUTE NOR CONSTITUTION AUTHORIZES CDC TO WAIVE, DISPENSE WITH, OR SUSPEND STATE EVICTION LAWS

96.    Plaintiff incorporates by reference all of the preceding material as though fully set forth herein.

97.    Evictions are a function of the police power of the several states. *Cf. Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (considering the New

York legislature's authority to enact emergency housing laws under the state's police power). In Virginia, a landlord's rights and remedies upon a material breach of a rental agreement, including the right to an eviction and the recovery of possession based on nonpayment of rent, are governed by a comprehensive statutory scheme. *See* Va. Code §§ 8.01-470, 55.1-1245 *et seq*.

98.    CDC's order purports to waive or suspend the duly enacted laws that govern evictions in the Commonwealth of Virginia.

99.    CDC has no authority to waive, dispense with, or suspend duly enacted state laws; nor does the Executive Branch more generally. *See Matthews v. Zane's Lessee*, 9 U.S. 92, 98 (1809) (Marshall, C.J.) ("The president cannot dispense with the law, nor suspend its operation."); *Baker v. Carr*, 369 U.S. 186, 244 n.2 (1962) ("No tribunal or department in our system of governments ever can be lawfully authorized to dispense with the laws, like some of the tyrannical Stuarts, or to repeal, or abolish, or suspend the whole body of them[.]") (quoting *Luther v. Borden*, 48 U.S. 1, 69 (1849) (Woodbury, J., dissenting)).

100.  To the contrary, the United States Constitution forbids the Executive Branch from suspending the law.

101.  The separation of powers enshrined in our Constitution prevents the suspension of law through executive action, as it would effect a merger of the executive and legislative powers. *See* Philip Hamburger, Nat'l Rev., *Are Health-*

*Care Waivers Unconstitutional?* (Feb. 8, 2011), *available* at

https://www.nationalreview.com/2011/02/are-health-care-waiversunconstitutional-philip-hamburger ("The power to dispense with the laws had no place in a constitution that divided the active power of government into executive and legislative powers."). Suspension of laws by the Executive Branch is "a power exercised not through and under the law, but above it." *Id*.

102.   The Founder's placement of the Suspension Clause in Article I reflects that the U.S. Constitution continued the English common-law tradition of vesting the suspension power solely in the Legislative Branch. *See* Philip Hamburger, *Beyond Protection*, 109 COLUM. L. REV. 1823, 1919 (2009); Amanda L. Tyler, *Habeas Corpus in Wartime: From the Tower of London to Guantanamo Bay* (2017) (chronicling the original meaning of the Suspension Clause). The limited exception for the suspension of habeas corpus "in Cases of Rebellion or Invasion" when "the public Safety may require it" proves the more general rule that duly enacted laws may not be suspended during an emergency that is neither a rebellion nor an invasion, even by Congress. U.S. Cont., art. I, § 9, cl. 2.

103.   And in contrast to the legislature's suspension authority, the executive "could not, even during an emergency, seize property" or "constrain the natural liberty of persons who were within the protection of the law, unless [the

24

executive] had legislative authorization." Hamburger, *Beyond Protection*, 109 COLUM. L. REV. at 1919.

104.   CDC has not identified any act of Congress that delegated authority to impose an eviction moratorium across the United States. Section 264(a) authorizes CDC only to make and enforce regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

105.   With no applicable grant of statutory authority to suspend laws, CDC has no authority to do anything with respect to Virginia's comprehensive laws. *See Home Bldg & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 425 (1934) ("Emergency does not create power.  Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.").

106.   Because CDC could not lawfully waive the application of Virginia's laws governing evictions, Va. Code §§ 8.01-470, 55.1-1245 *et seq.*, the Order is void *ab initio* and must fail.

WHEREFORE, Plaintiff demands judgment against CDC invalidating CDC's eviction-moratorium order and any other relief that may be appropriate.

September 8, 2020

Respectfully,

*/s/ James W. Hawkins*
James W. Hawkins
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
5470 Blair Valley Run
Cumming, GA 30040
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5210
*Motion to Appear Pro Hac Vice*
*Forthcoming*
*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing court filing has been prepared in 14-point

Times New Roman font and complies with LR 5.1, NDGa and LR 7.1(D), NDGa.

<u>*/s/ James W. Hawkins*</u>
James W. Hawkins
*Counsel for Plaintiff*