IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| | : | |
| RICHARD LEE BROWN, | : | CIVIL ACTION NO.: |
| | : | 1:20-CV-3702-WMR |
| & | : | AMENDED COMPLAINT |
| | : | |
| JEFFREY RONDEAU, | : | |
| | : | |
| & | : | |
| | : | |
| DAVID KRAUSZ, | : | |
| | : | |
| & | : | |
| | : | |
| SONYA JONES, | : | |
| | : | |
| & | : | |
| | : | |
| NATIONAL APARTMENT | : | |
| ASSOCIATION, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ALEX AZAR, | : | |
| IN HIS OFFICIAL CAPACITY AS | : | |
| SECRETARY | : | |
| U.S. DEPARTMENT OF | : | |
| HEALTH AND HUMAN SERVICES: | | |
| | : | |
| & | : | |
| | : | |
| U.S. DEPARTMENT OF | : | |
| HEALTH AND HUMAN SERVICES: | | |
| | : | |
| & | : | |

|                                    |   |
|------------------------------------|---|
|                                    | : |
| NINA B. WITKOFSKY,                 | : |
| IN HER OFFICIAL CAPACITY AS        | : |
| ACTING CHIEF OF STAFF              | : |
| U.S. CENTERS FOR DISEASE           | : |
| CONTROL AND PREVENTION,            | : |
|                                    | : |
| &                                  | : |
|                                    | : |
| U.S. CENTERS FOR DISEASE           | : |
| CONTROL AND PREVENTION,            | : |
|                                    | : |
| Defendants.                        | : |

## AMENDED COMPLAINT

When Plaintiffs Richard Lee (Rick) Brown, Jeffrey Rondeau, David Krausz and Sonya Jones and the members of Plaintiff National Apartment Association (NAA) rented their respective properties, they expected that their tenants would uphold their end of the contract and pay their rent. They also expected, if the tenants did not, that they could resort to the law and court system to evict their tenants so that they could regain possession of their property and let it to tenants who would pay rent.

Plaintiffs upheld their end of the bargain. They provided a habitable home to their tenants and continue to pay for maintenance, utilities and other expenses. When their tenants breached their agreement, Plaintiffs should have been able to follow the lawful processes laid down by state law for retaking possession of their homes.

Plaintiffs failed to anticipate, however, that the U.S. Centers for Disease Control, a federal agency, would issue a sweeping unilateral order suspending *state* law under the flimsy premise that doing so was "necessary" to control the COVID-19 pandemic. CDC's actions are not authorized by statute or regulation. But even if they were, they are unprecedented in our history and are an affront to core constitutional limits on federal power. If allowed, the Order would abrogate the right to access the courts, violate limits on the Supremacy Clause, implicate the non-delegation doctrine, and traduce anti-commandeering principles. CDC's effort to seize control of state law on such an insupportable basis must be rejected.

## **PARTIES**

1.      Plaintiff Richard Lee (Rick) Brown is a natural person and a resident of the Commonwealth of Virginia.

2.      Plaintiff Jeffrey Rondeau is a natural person and resident of the State of New Jersey.

3.      Plaintiff David Krausz is a natural person and resident of the State of South Carolina.

4.      Plaintiff Sonya Jones is a natural person and resident of the State of Georgia.

5.      Plaintiff National Apartment Association is a trade association for owners and managers of rental housing that is comprised of 157 state and local affiliated

apartment associations, and over 82,600 members managing more than 9.7 million rental homes throughout the United States, Canada, and the United Kingdom.

6.     Defendant Secretary Alex Azar is the agency head of the U.S. Department of Health and Human Services (HHS) and is sued in his official capacity.

7.     Defendant HHS is an agency of the United States.

8.     Defendant Nina B. Witkofsky is the Acting Chief of Staff for the Centers for Disease Control and Prevention (CDC) and is the agency head responsible for the challenged agency action. She is sued in her official capacity.

9.     Defendant CDC is an agency of the United States located within HHS and headquartered in Atlanta, Georgia.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331 as this matter involves questions arising under the Constitution of the United States and the Administrative Procedure Act.

11.     This Court has the authority to grant declaratory and injunctive relief in this matter pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) because the defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

13.    Plaintiff Rick Brown owns a residential property in Winchester, VA.

14.    Mr. Brown has a mortgage on the property and makes monthly payments of approximately $400 for the mortgage principal, interest and taxes.

15.    On April 1, 2017, Mr. Brown leased the property to a tenant, who agreed to pay monthly rent of $925.

16.    The lease automatically renewed several times and is currently in effect.

17.    The tenant of Mr. Brown's property has fallen behind on rent, and asserted to Mr. Brown that she is unable to pay because of economic stress arising from the COVID-19 pandemic, has used best efforts to obtain available government assistance and otherwise pay rent, has no other home to go to, and is making less than $99,000 annually.

18.    To date, the tenant owes $8,092 in unpaid rent, and has made no payments at all to Mr. Brown for several months.

19.    Plaintiff Jeffrey Rondeau owns a residential property in Vale, NC. He intends to use this property as his home once he retires.

20.    Mr. Rondeau has a mortgage on the property and makes monthly payments of approximately $880 for the mortgage principal, interest and taxes. He pays a property management company 10% of the monthly rent ($100) to collect rent from the property.

21.     On May 1, 2019, Mr. Rondeau leased the property to tenant, who agreed to pay monthly rent of $1,000. Mr. Rondeau and his tenant renewed their lease as of May 1, 2020, for a term of one year.

22.     Mr. Rondeau's tenants have had a spotty payment history, typically filing rent significantly after its due date. The tenants stopped paying altogether and have not paid any rent since July 6, 2020.

23.     The tenants of Mr. Rondeau's property have fallen behind on rent, and asserted to Mr. Rondeau that they are unable to pay because of economic stress arising from the COVID-19 pandemic, have used best efforts to obtain available government assistance and otherwise pay rent, have no other home to go to, and are making less than $99,000 annually.

24.     To date, the tenants owe more than $2,100 in unpaid rent and fees and has made no payments at all to Mr. Rondeau for several months.

25.     Plaintiff David Krausz owns a residential own a residential property in Columbia SC, which he leased to a tenant for a monthly rent of $700.

26.     Mr. Krausz has a currently effective lease agreement with the tenant.

27.     Mr. Krausz's tenant fell behind on rent in July 2020, and now owes approximately $2265 in unpaid rent. Under South Carolina law Mr. Krausz is entitled to seek an eviction for nonpayment of rent.

28.     Plaintiff Sonya Jones owns a residential property in Jesup, GA.

29.     Ms. Jones leased the property to a tenant for a monthly rent of $450.

30.     Ms. Jones has a currently effective lease agreement with her tenant.

31.     Ms. Jones' tenant has fallen behind on rent and now owes more than $1800 in unpaid rent. The tenant also owes additional late fees. Under Georgia law Ms. Jones is entitled to seek an eviction for nonpayment of rent.

32.     On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-316, which included in Section 4024 a limited and temporary moratorium on evictions for certain types of federally-backed housing that expired on July 24, 2020.

33.     On August 7, 2020, a majority of the Supreme Court of Virginia issued an order, at the request of Virginia Governor Ralph Northam, modifying and extending a declaration of judicial emergency in response to COVID-19. *In re: Amendment of Eighth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency* (Va. Aug. 7, 2020) *available at* http://www.vacourts.gov/news/items/covid/2020_0807_scv_amendment_to_eighth _order.pdf.

34.     The order provided that from August 10, 2020 through September 7, 2020 "the issuance of writs of eviction pursuant to unlawful detainer actions is suspended and continued. However, this suspension and continuation shall not

apply to writs of eviction in unlawful detainer actions that are unrelated to the failure to pay rent." *Id*. at 2.

35.    On May 30, 2020, Chief Justice Cheri Beasley of the North Carolina Supreme Court issued emergency directive 17, which stayed all pending eviction proceedings until June 21, 2020, and declared that "Sheriffs shall not be required to execute pending writs of possession of real property or make due return of such writs until 30 June 2020." Emergency Directives 17-9, Order of the Chief Justice of the Supreme Court of North Carolina (N.C. May 30, 2020), *available at* https://www.nccourts.gov/assets/news-uploads/30%20May%202020%207A-39%28b%29%282%29%20Order.pdf?v6tK3XJVqgOY0Ps80nAcS6s5ghD2XLeU.

36.    North Carolina Governor Roy Blunt issued Executive Order No. 142 on May 30, 2020, which supplemented Chief Justice Beasley's directive and prohibited residential landlords from evicting tenants for late or nonpayment through July 20, 2020. *Assisting North Carolinians by Placing Temporary Prohibitions on Evictions and Extending the Prohibition on Utility Shut-Offs*, State of North Carolina Executive Order No. 142 (N.C. May 30, 2020), *available at* https://files.nc.gov/governor/documents/files/EO142-Temp-Prohibitions-on-Evictions-and-Extending-Prohibition-on-Utility-Shut-Offs.pdf.

37.    On March 17, 2020 the Supreme Court of South Carolina stayed all evictions proceedings in the state until May 1, 2020. RE: Statewide Evictions,

Order of the Chief Justice of the Supreme Court of South Carolina (N.C. Mar. 17, 2020) *available at*

https://www.sccourts.org/courtOrders/displayOrder.cfm?orderNo=2020-03-17-02.

38.     On September 1, 2020, Defendant Acting Chief Witkofsky issued an order titled, "*Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19.*"

39.     The CDC Order became effective upon publication in the Federal Register, which occurred on September 4, 2020. 85 Fed. Reg. 55292 (Sept. 4, 2020), *available at* https://www.govinfo.gov/content/pkg/FR-2020-09-04/pdf/2020-19654.pdf.

40.     The CDC Order provided, "Under this Order, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id*.

41.     The CDC Order was not effective so long as a local jurisdiction applied similar eviction restrictions. *Id*.

42.     The CDC Order said, "'Evict' and 'Eviction' means any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a

covered person from a residential property. This does not include foreclosure on a home mortgage." *Id*. at 55293.

43.     The CDC Order also said, "[A] person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both[.]" *Id*. at 55296.

44.     The CDC Order was effective upon publication until December 31, 2020, "unless extended." *Id*. at 55297.

45.     Mr. Brown has maintained the property in compliance with all legal obligations as landlord, and the tenant has no other defense to her nonpayment of rent.

46.     Mr. Brown is entitled to a writ of possession and a writ of eviction.

47.     On August 18, 2020, Mr. Brown attempted to have the Winchester City Sheriff's Department serve a five-day termination notice pursuant to Va. Code § 55.1-1245(f) to the tenant.

48.     Sheriff Les Taylor informed Mr. Brown that the Winchester City Sheriff's Department would no longer issue and serve such notices in compliance with the Supreme Court of Virginia's order.

49.     Because of operation of the Supreme Court of Virginia's August 7 Order,

Mr. Brown was unable to obtain a writ of eviction to oust the tenant for

nonpayment of rent until September 7, 2020.

50.     Mr. Brown now intends to seek eviction of his tenant for nonpayment of rent

using legal process in Virginia state courts.

51.     Upon information and belief, Mr. Brown's tenant is a "covered person"

under the CDC Order.

52.     Mr. Brown intends to violate the CDC Order through lawful processes under

Virginia law by seeking an eviction order, and having a sheriff forcibly remove his

tenant from the property.

53.     Mr. Brown intends to violate the CDC Order even if his tenant presents an

attestation in eviction proceedings that she is a "covered person" as defined in the

CDC Order.

54.     Mr. Brown continues to provide habitable premises to the tenant, and his

tenant has no other defense to eviction under Virginia law.

55.     Because of the CDC Order, Mr. Brown suffers significant economic

damages, including $8,092 in unpaid rent, as well as monthly maintenance costs,

damages to his property and the lost opportunity to rent or use the property at fair

market value of at least $925 per month.

56.     The tenant is also likely insolvent (and judgment proof), and Mr. Brown will be unlikely to obtain any economic relief or damages from the tenant once the CDC Order expires at the end of December.

57.     Mr. Brown's only opportunity to mitigate his loss will be from ousting the tenant who is in wrongful possession of the premises.

58.     Mr. Rondeau is entitled to a writ of possession and a writ of ejectment.

59.     On August 17, 2020, Mr. Rondeau filed for a summary ejectment in North Carolina state court. One week later, on August 24, a state judge granted ejectment and ordered a sheriff to serve a writ of possession removing the tenants from the property.

60.     Mr. Rondeau's writ of ejectment became final and unappealable on September 3, 2020. But, on September 6, 2020, Mr. Rondeau's tenant provided him with a signed affidavit consistent with the CDC Order.

61.     On September 14, 2020, Mr. Rondeau requested a writ of possession. The eviction is currently scheduled for September 21, 2020, at 9:00 a.m.

62.     Mr. Rondeau intends to violate the CDC Order through lawful processes under North Carolina law by seeking an eviction order, and having a sheriff forcibly remove his tenants from the property.

63.     Mr. Rondeau continues to provide habitable premises to the tenants, and his tenants have no other defense to eviction under North Carolina law.

64.     Because of the CDC Order, Mr. Rondeau suffers significant economic damages, including $2,100 in unpaid rent and fees, as well as monthly maintenance costs, damages to his property and the lost opportunity to rent or use the property at fair market value of at least $1,000 per month.

65.     If Mr. Rondeau is unable to earn any rent on his property before January 2021 he faces a likelihood of being unable to pay the mortgage on the property and is at risk of foreclosure.

66.     The tenant is also likely insolvent (and judgment proof), and Mr. Rondeau will be unlikely to obtain any economic relief or damages from the tenant once the CDC Order expires at the end of December.

67.     Mr. Rondeau's only opportunity to mitigate his loss will be from ousting the tenant who is in wrongful possession of the premises.

68.     On July 7, 2020, Mr. Krausz filed an Application for Ejectment to initiate the legal eviction process under South Carolina law.

69.     Mr. Krausz's tenant requested a hearing, which was held on July 30, 2020.

70.     At the hearing Mr. Krausz and his tenant entered into a consent agreement where the tenant would have 4 days to pay $700 towards past due rent, and then was required to pay an additional $2265 in unpaid rent by August 31, 2020. The tenant agreed to waive their right to an additional hearing. If the tenant breached the agreement, which was accepted by the court, then Mr. Krausz was entitled to

request the court issue a Writ of Ejectment immediately without any further hearings on the matter.

71.    Mr. Krausz's tenant paid $700 for July's rent as agreed but failed to pay any portion of the outstanding $2265.

72.    On September 11, 2020 Mr. Krausz requested service of a writ of ejectment from the magistrate court, which is a process by which a sheriff evicts a tenant under South Carolina law.

73.    The writ was granted, and the Richland County South Carolina Sheriff's Department scheduled an eviction of Mr. Krausz's tenant for September 21, 2020.

74.    On September 16, 2020, Mr. Krausz's tenant provided the South Carolina court with a declaration consistent with the CDC Order, declaring that the tenant was unable to pay rent because of economic stress arising from the COVID-19 pandemic, had used best efforts to obtain available government assistance and was using best efforts to make timely partial payments that are as close to the full payment as possible, had no other home to go to, and was making less than $99,000 annually.

75.    The South Carolina court then immediately stayed the eviction.

76.    Mr. Krausz has maintained his property in compliance with all legal obligations as a landlord, and his tenant has no defense for her nonpayment of rent.

Mr. Krausz is also entitled to regain possession of his property under South Carolina law.

77.    Because of the CDC Order, Mr. Krausz has incurred significant economic damages, including approximately $2,265 in unpaid rent and fees, as well as monthly maintenance costs, damages to his property and the lost opportunity to rent or use the property at fair market value of at least $700 per month. The tenant appears to be insolvent, and Mr. Krausz will likely not be able to obtain any economic relief or damages from her. Mr. Krausz's only opportunity to mitigate my loss will be from ousting the tenant who is in wrongful possession of the premises and renting the property to another tenant.

78.    On August 24, 2020 Ms. Jones filed and served a dispossessory affidavit on her tenant consistent with Georgia law, which directed her tenant to vacate the property.

79.    Ms. Jones' tenant requested a hearing, which was held on September 8, 2020. That was the first business day following the effective date of the CDC's order.

80.    At the hearing Ms. Jones' tenant said that his challenge to the eviction was related to the COVID-19 pandemic, and the court continued all proceedings until January 2021 in purported compliance with CDC's eviction moratorium order.

81.     Based on information provided to Ms. Jones by her tenant, and the tenant's representations in court, Ms. Jones' tenant is a "covered person" as defined by the CDC order.

82.     Ms. Jones maintained her property in compliance with all legal obligations as a landlord, and the tenant has no defense for their nonpayment of rent. She is also entitled to regain possession of the property under Georgia law.

83.     Because of the CDC Order, Ms. Jones has incurred significant economic damages, including approximately $1,800 in unpaid rent and fees, as well as monthly maintenance costs, damages to the property and the lost opportunity to rent or use the property at fair market value of at least $450 per month.

84.     The tenant is also insolvent, and Ms. Jones will not be able to obtain any economic relief or damages from him.

85.     Ms. Jones' only opportunity to mitigate my loss will be from ousting the tenant who is in wrongful possession of the premises and renting the property to another tenant.

86.     NAA is a trade association for owners and managers of rental housing that is comprised of 157 state and local affiliated apartment associations, and over 85,485 members managing more than 10 million rental units throughout the United States. NAA has members in all 50 states.

87.    NAA has members throughout the United States who are entitled to writs of possession and eviction in states without eviction moratoria.

88.    NAA's members continue to provide habitable premises to their tenants, but have been order by CDC not to utilize existing state law procedures for evicting tenants for nonpayment of rent when presented with a form affidavit.

89.    Because of the CDC Order, NAA's members have suffered significant economic damages, including unpaid rent and fees, as well as monthly maintenance costs, damages to their property and the lost opportunity to rent or use their properties at fair market value.

90.    NAA's members will be unlikely to obtain any economic relief or damages from their tenants once the CDC Order expires at the end of December because, by definition, any tenant presenting an appropriate attestation will be insolvent.

91.    NAA's members will lose millions of dollars in uncollected rents, while expending huge sums for maintenance and costs. Many of NAA's member businesses are unlikely to recover from the economic stress caused by the CDC Order.

92.    NAA members' only opportunity to mitigate their losses will be from ousting their tenants who are in wrongful possession of the premises.

**COUNT I: UNLAWFUL AGENCY ACTION IN VIOLATION OF THE
ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 706(2)(B), (C)—CDC
EXCEEDED ITS STATUTORY AND REGULATORY AUTHORITY BY
ISSUING THE HALT IN RESIDENTIAL EVICTIONS ORDER**

93.     Plaintiffs incorporate by reference all of the preceding material as though

fully set forth herein.

94.     Under the Administrative Procedure Act, this Court is authorized to hold

unlawful and set aside agency action, findings, and conclusions that it finds to be

contrary to constitutional right or in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right. *See* 5 U.S.C. §§ 706(2)(B), (C).

95.     The CDC Order was purportedly issued under the authority of "Section 361

of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2."

96.     Under 42 U.S.C. § 264(a), the CDC may only "make and enforce such

regulations" that "are necessary to prevent the introduction, transmission, or spread

of communicable diseases from foreign countries into the States or possessions, or

from one State or possession into any other State or possession" and "may provide

for such inspection, fumigation, disinfection, sanitation, pest extermination,

destruction of animals or articles found to be so infected or contaminated as to be

sources of dangerous infection to human beings, and other measures, as in his

judgment may be necessary" to carry out and enforce such regulations.

97.     Under 42 C.F.R. § 70.2, when the Director of the CDC "determines that the

measures taken by health authorities of any State or possession (including political

subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession" the Director is authorized to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

98.     The CDC Order purports to restrict "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from "evict[ing] any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." 85 Fed. Reg. at 55292. A "covered person" is "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating" certain information outlined in the Order. 85 Fed. Reg. at 55293; *see also* 85 Fed. Reg. at 55297 (CDC Declaration form). The effective period of the Order is from September 4, 2020 through December 31, 2020. 85 Fed. Reg. at 55292.

99.     The CDC Order only applies to States, local, territorial, or tribal areas that do not have "a moratorium on residential evictions that provides the same or

greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.

100.   The CDC Order baldly states that Defendant Witkofsky "determined the temporary halt in evictions in this Order constitutes a reasonably necessary measure under 42 CFR 70.2 to prevent the further spread of COVID-19 throughout the United States." 85 Fed. Reg. at 55296. The Order further states that she "determined that measures by states, localities, or U.S. territories that do not meet or exceed these minimum protections [i.e., those that have residential eviction moratoria] are insufficient to prevent the interstate spread of COVID-19." 85 Fed. Reg. at 55296.

101.   The CDC Order does not identify or offer any analysis whatsoever about which States, local, territorial, or tribal areas have "a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order." 85 Fed. Reg. at 55292.

102.   Individuals or organizations that violate the Order are subject to criminal penalties, including fines and jail time. *See* 85 Fed. Reg. at 55296; *see also* 18 U.S.C. §§ 3559, 3571; 42 U.S.C. § 271; 42 C.F.R. § 70.18.

103.   Agencies have no inherent power to make law. *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("[T]he lawmaking function belongs to Congress … and may not be conveyed to another branch or entity."). This limitation is a

constitutional barrier to an exercise of legislative power by the executive branch.

Agencies have "no power to act … unless and until Congress confers power upon

[them]." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

104.   Nothing in the relevant statutes or regulations purports to give CDC the

power or authority to issue an eviction-moratorium order.

105.   Nothing in the relevant statutes or regulations purports to give CDC the

power or authority to criminalize otherwise lawful behavior.

106.   The Order was issued in excess of any statutory authority and is therefore

invalid.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's

Eviction-Moratorium Order and any other relief that may be appropriate.

## COUNT II: ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)—THE ORDER IS NOT SUPPORTED BY A RATIONAL DETERMINATION DRAWN FROM SUBSTANTIAL EVIDENCE

107.   Plaintiffs incorporates by reference all of the preceding material as though

fully set forth herein.

108.   Under the Administrative Procedure Act, a court must set aside "arbitrary

and capricious" agency action. 5 U.S.C. § 706(2)(A).

109.   The CDC Order fails the arbitrary and capricious standard because it is not

supported by a rational determination drawn from substantial evidence.

110.   CDC has not met its baseline obligation of showing that local jurisdictions are taking "insufficient" measures to prevent the spread of COVID-19, as required when CDC acts under the authority purportedly granted by 42 C.F.R. § 70.2 (granting authority to CDC when the agency "determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases[.]").

111.   CDC has also failed to catalogue the efforts taken by *any* jurisdiction to combat COVID-19; or explain why allowing eviction proceedings, more than any other purported lacuna in prevention strategies, represents the line that states may not cross; or cite *any* evidence that any infection has arisen because of an eviction proceeding.

112.   CDC's secondary conclusion, that an eviction moratorium is "necessary" to stop the spread of COVID-19 is unsupported by substantial evidence.

113.   In fact, CDC is careful never to actually say that the moratorium is necessary—the best it says is that "[i]n the context of a pandemic, eviction moratoria—like quarantine, isolation, and social distancing—can be an effective public health measure utilized to prevent the spread of communicable disease." 85 Fed. Reg. at 55294. But even this tepid statement has no real evidentiary support.

114.   Instead, CDC relies on hyperbolic reasoning—saying that "mass evictions" and "homelessness" might increase the likelihood of COVID-19, and thus that that the *only* appropriate course of action is to halt evictions nationwide. *See* 85 Fed. Reg. at 55294-96. CDC does not explain sufficiently why this would be so or why other remedial measures are inadequate. *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019) (ruling that an agency decision must be "supported by reasonable, substantial, and probative evidence on the record considered as a whole").

115.   CDC also does not explain why other remedial measures are inadequate.

116.   The evidence on which CDC relies fails to support CDC's Order, and it is thus arbitrary and capricious.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's Eviction-Moratorium Order and any other relief that may be appropriate.

## COUNT III: VIOLATION OF THE RIGHT OF ACCESS TO COURTS UNDER THE U.S. CONSTITUTION—THE ORDER UNLAWFULLY DENIED PLAINTIFFS ACCESS TO THE ONLY LAWFUL MEANS OF EVICTING A DELINQUENT TENANT

117.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

118.   The Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth and Fourteenth Amendment Due Process Clauses and the Fourteenth Amendment's Equal Protection Clause collectively provide a federal

constitutional right of access to courts. *Christopher v. Harbury*, 536 U.S. 403, 415, 415 n.12 (2002).

119.   No state actor may systemically frustrate a plaintiff "in preparing and filing suits" by foreclosing a particular type of relief. *Id*. at 413.

120.   An unlawful detainer action is a landlord's *sole* means of reacquiring possession of his residential property in Virginia. A sheriff must enforce a writ of eviction. *See* Va. Code § 8.01-470 (writs of eviction generally). A residential landlord is forbidden from taking possession of his own property. Va. Code § 55.1-1252. Instead, "[i]f a landlord unlawfully removes or excludes a tenant from the premises … the *tenant* may obtain an order from a general district court to recover possession, require the landlord to resume any such interrupted essential service, or terminate the rental agreement and, in any case, recover the actual damages sustained by him and reasonable attorney fees." Va. Code. § 55.1-1243(a).

121.   Similarly, North Carolina courts provide a landlord's sole means of eviction and regaining possession of his or her property from a tenant who has breached a lease: "It is the public policy of the State of North Carolina, in order to maintain the public peace, that a residential tenant shall be evicted, dispossessed or otherwise constructively or actually removed from his dwelling unit only in accordance with the procedure prescribed in Article 3 or Article 7 of this Chapter."

24

N.C. Gen. Stat. § 42-25.6; *see also id.* § 1-313 ("The execution must be directed to the sheriff[.]").

122.   In South Carolina a landlord must also utilize a court eviction process, and obtain a writ of ejectment from a judge. *See* S.C. Code § 27-40-710. The writ must be executed by a state official, and a landlord may not attempt to evict a tenant through self-help. S.C. Code § 27-40-760. A landlord is also liable to a tenant for the greater of three months' rent or twice actual damages for an unlawful ouster if he attempts to evict a tenant outside the court process. S.C. Code § 27-40-660.

123.   Georgia also requires residential landlords to use court eviction proceedings, and only permits eviction by a sheriff, constable or marshal's execution of a writ of possession. *See* Ga. Code § 44-7-55(d). Without being issued such a writ, a landlord may not retake possession of her residential property. *See id.* A landlord who resorts to self-help evictions faces criminal punishment. *See* Ga. Code § 44-7-14.1 ("Unlawful to suspend furnishing of utilities to tenant until final disposition of dispossessory proceeding.").

124.   Indeed, in a majority of jurisdictions across the United States residential landlords must follow utilize state eviction proceedings before lawfully ousting tenants for nonpayment of rent.

125.   Plaintiffs are entitled to obtain a writs pursuant to state law to regain possession of their properties for nonpayment of rent.

126.   Plaintiffs' tenants currently owe unpaid rent and have no defenses in state court other than the CDC Order.

127.   By operation of the CDC Order, Plaintiffs are unable to obtain writs of eviction pursuant to the legal processes set out by their respective state laws

128.   Plaintiffs have no ability to legally oust their tenants for nonpayment of rent.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's Eviction-Moratorium Order and any other relief that may be appropriate.

## COUNT IV: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE—THE CDC EVICTION-MORATORIUM ORDER CANNOT BE THE SUPREME LAW OF THE LAND BECAUSE IT IS NOT A LAW ADOPTED PURSUANT TO THE CONSTITUTION

129.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

130.   Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

131.   The Supremacy Clause grants "supreme" status only to the "*Laws* of the United States." *Id.* (emphasis added).

132.   "[A]n agency literally has no power to act, let alone to pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it." *New York v. FERC*, 535 U.S. 1, 18 (2002).

133.   "[P]reemption takes place only when and if the agency is acting within the scope of its congressionally delegated authority." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019).

134.   The Supremacy Clause grants "supreme" status only to the "Laws of the United States which shall be made *in Pursuance thereof*," *i.e.* in pursuance of "This Constitution." U.S. Const. Art. VI, cl. 2 (emphasis added).

135.   The conditional nature of the Supremacy Clause accords supremacy to federal statutes or regulations made "in Pursuance of" the Constitution.

136.   CDC has not identified any act of Congress that confers upon it the power to impose a halt on residential evictions.

137.   CDC has not identified any act of Congress that shows it is acting within the scope of some congressionally delegated authority to impose eviction moratoriums across the United States.

138.   Indeed, Section 4024 of the CARES Act, which imposed a temporary moratorium on certain evictions, contained no delegation of authority to any agency, much less CDC, and even then applied only to certain federally-backed housing.

139.   The weaker the link between relevant federal statutes and CDC's Order, the weaker is CDC's ability to invoke the Supremacy Clause to deprive Plaintiffs of their right to state-court eviction process.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's Eviction-Moratorium Order and any other relief that may be appropriate.

### COUNT V: VIOLATION OF U.S. CONSTITUTION'S SUPREMACY CLAUSE AND TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER DOES NOT VALIDLY PREEMPT STATE LAW

140.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

141.   Article VI, Clause 2 of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

142.   The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

143.   The relevant statute, 42 U.S.C. § 264(a), authorizes CDC only to make and enforce regulations that "provide for such inspection, fumigation, disinfection,

sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

144.   The relevant regulation, 42 C.F.R. § 70.2, also authorizes CDC only to "take measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."

145.   Nothing in the relevant statutes or regulations purports to give CDC the authority to order an eviction moratorium that preempts state landlord-tenant law.

146.   Nothing in the relevant statutes or regulations purports to give CDC the authority to preempt the Contracts Clause of Article I, Section 10 of the United States Constitution, the Contracts Clauses of the state constitutions, or otherwise preempt state law protecting from impairment the obligations of private contracts that are in force.

147.   Nothing in the relevant statutes or regulations gives CDC the authority to order a nationwide moratorium "to temporarily halt residential evictions to prevent the further spread of COVID-19," CDC Order, 85 Fed. Reg. at 55292, because CDC's authority is confined to undertaking measures providing for "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or

articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a); 42 C.F.R. § 70.2.

148.   Although "state laws can be pre-empted by federal regulations as well as by federal statutes," *Hillsborough County, Fla. v. Automated Medical Lab, Inc.*, 471 U.S. 707, 713 (1985), the relevant statute contains a savings clause, which states: "Nothing in this section or section 266 of this title, or the regulations promulgated under such sections, may be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States), except to the extent that such a provision conflicts with an exercise of Federal authority under this section or section 266 of this title." 42 U.S.C. § 264(e).

149.   The savings clause of 42 U.S.C. § 264(e) states that 42 U.S.C. § 264(a) and 42 C.F.R. § 70.2 cannot "be construed as superseding any provision under State law (including regulations and including provisions established by political subdivisions of States)." In other words, the CDC is statutorily expressly deauthorized from issuing orders such as the Order that would supersede state landlord-tenant law, or state laws relating to non-impairment of contracts.

150.   The relevant state landlord-tenant laws and laws relating to non-impairment of contracts do not conflict with CDC's authority to regulate "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or

articles found to be so infected or contaminated as to be sources of dangerous

infection to human beings." 42 U.S.C. § 264(a).

151.   Landlord-tenant law and law relating to non-impairment of contracts "has

long been regarded as a virtually exclusive province of the States" under the Tenth

Amendment upon which the federal government cannot intrude. *Sosna v. Iowa*,

419 U.S. 393, 404 (1975). The CDC Order displaces inherent state authority over

residential evictions and therefore violates the Tenth Amendment.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's

Eviction-Moratorium Order and any other relief that may be appropriate.

### COUNT VI: VIOLATION OF U.S. CONSTITUTION'S TENTH AMENDMENT—THE CDC EVICTION-MORATORIUM ORDER UNCONSTITUTIONALLY COMMANDEERS STATE RESOURCES AND STATE OFFICERS TO ACHIEVE FEDERAL POLICY OBJECTIVES OR EXECUTE FEDERAL LAWS

152.   Plaintiffs incorporate by reference all of the preceding material as though

fully set forth herein.

153.   The Tenth Amendment to the United States Constitution provides: "The

powers not delegated to the United States by the Constitution, nor prohibited by it

to the States, are reserved to the States respectively, or to the people."

154.   Under the Tenth Amendment and the anti-commandeering doctrine, CDC

cannot commandeer state resources to achieve federal policy objectives or

commandeer state officers to execute federal laws. CDC's Order impermissibly

commandeers state courts and state officers to apply, enforce, and implement an unconstitutional federal law. *New York v. United States*, 505 U.S. 144 (1992); *Printz v. United States*, 521 U.S. 898 (1997).

155.   CDC cannot order state courts and relevant state actors not to process summary evictions. Landlords, like Plaintiffs, who rely on state process, run the risk of a federal prosecution for doing so. Plaintiffs run the risk of being fined up to $100,000 and sentenced to one year in prison for invoking and utilizing relevant state laws. *See* CDC Order, 85 Fed. Reg. at 55296.

156.   Neither Congress nor CDC can "compel the States to … administer a federal regulatory program." *New York v. United States*, 504 U.S. at 188. Neither Congress nor CDC can "halt" pending or forthcoming state adjudicatory proceedings. CDC Order, 85 Fed. Reg. at 55296. Neither Congress nor CDC can modify state judicial processes by dictating that a declaration executed by a tenant shall be adequate proof or otherwise suffice to halt or suspend the judicial eviction action. *Id.* at 55292–93, 55297.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's Eviction-Moratorium Order and any other relief that may be appropriate.

## COUNT VII: VIOLATION OF U.S. CONSTITUTION ART I, § 1—THE CDC ORDER IS AN INVALID EXERCISE OF LEGISLATIVE POWER

157.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

32

158.   Article I, § 1 of the U.S. Constitution states, "*All* legislative Powers herein granted shall be vested in a Congress of the United States." (Emphasis added.) The grant of "[a]ll legislative Powers" to Congress in the Vesting Clause means that Congress may not divest "powers which are strictly and exclusively legislative." *Wayman v. Southard*, 23 U.S. 1, 42-43 (1825).

159.   Whether federal legislation effects a permissible or prohibited delegation of legislative powers—and thus violates the Article I, § 1 Vesting Clause—is determined based on whether the legislation provides "an intelligible principle" to which an administering agency is directed to conform when carrying out its functions under the legislation. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). If the law fails to provide a guiding principle of that sort but instead delegates to the agency authority to establish its own policies, the legislation is invalid because it violates the Vesting Clause. *Id*.

160.   As interpreted by CDC, 42 U.S.C. § 264(a) fails to set forth any "intelligible principle" to which CDC is directed to conform. Citing § 264(a), the Order imposes a nationwide moratorium on residential evictions based on CDC's judgment that a moratorium is necessary to curb "the introduction, transmission, or spread of communicable diseases." But if that finding is sufficient to justify the moratorium, then § 264(a) imposes no discernible limits on CDC's regulatory authority.

161.   Alternatively, if § 264(a) supplies a sufficient intelligible principle under current interpretation, then the doctrine must be re-examined so as to adhere to the proper limits contained in the Vesting Clause of Article I, § 1.

162.   As interpreted by the CDC Order, § 264(a) would also authorize CDC to prohibit all citizens from attending church services, assembling for the purpose of expressing their political views, or even leaving their own homes. It is debatable whether such measures could pass constitutional muster if adopted by Congress itself; but it is beyond dispute that such measures constitute the sorts of policy decisions that the Constitution reserves to Congress alone in its role as the Nation's exclusive repository of legislative power.

163.   Because § 264(a), as interpreted by CDC, fails to include an intelligible principle that imposes limits on CDC's alleged regulatory authority, § 264(a) violates the Article I, § 1 Vesting Clause and is thus invalid as applied.

164.   Because § 264(a) is unconstitutional as applied here, CDC lacks any statutory authority to adopt the Order.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's Eviction-Moratorium Order and any other relief that may be appropriate.

### COUNT VIII: UNLAWFUL SUSPENSION OF LAW—NEITHER STATUTE NOR CONSTITUTION AUTHORIZES CDC TO WAIVE, DISPENSE WITH, OR SUSPEND STATE EVICTION LAWS

165.   Plaintiffs incorporate by reference all of the preceding material as though fully set forth herein.

166.   Evictions and the laws governing when and under what circumstances a property owner can regain possession of his or her property are a function of the police power of the several states. *Cf. Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 247 (1922) (considering the New York legislature's authority to enact emergency housing laws under the state's police power). In Virginia and North Carolina, like most other states, a landlord's rights and remedies upon a material breach of a rental agreement, including the right to an eviction and the recovery of possession based on nonpayment of rent, are governed by a comprehensive statutory scheme. *See* Va. Code §§ 8.01-470, 55.1-1245 *et seq.*; N.C. Gen. Stat. §§ 1-313, 42-1 *et seq.*

167.   CDC's Order purports to waive or suspend the duly enacted laws that govern evictions in the several states.

168.   CDC has no authority to waive, dispense with, or suspend duly enacted state laws; nor does the Executive Branch more generally. *See Matthews v. Zane's Lessee*, 9 U.S. 92, 98 (1809) (Marshall, C.J.) ("The president cannot dispense with the law, nor suspend its operation."); *Baker v. Carr*, 369 U.S. 186, 244 n.2 (1962) ("No tribunal or department in our system of governments ever can be lawfully authorized to dispense with the laws, like some of the tyrannical Stuarts, or to

35

repeal, or abolish, or suspend the whole body of them[.]") (quoting *Luther v. Borden*, 48 U.S. 1, 69 (1849) (Woodbury, J., dissenting)).

169.   To the contrary, the United States Constitution forbids the Executive Branch from suspending the law.

170.   The separation of powers enshrined in our Constitution prevents the suspension of law through executive action, as it would effect a merger of the executive and legislative powers. *See* Philip Hamburger, Nat'l Rev., *Are Health-Care Waivers Unconstitutional?* (Feb. 8, 2011), *available* at

https://www.nationalreview.com/2011/02/are-health-care-waiversunconstitutional-philip-hamburger ("The power to dispense with the laws had no place in a constitution that divided the active power of government into executive and legislative powers."). Suspension of laws by the Executive Branch is "a power exercised not through and under the law, but above it." *Id*.

171.   The Founder's placement of the Suspension Clause in Article I reflects that the U.S. Constitution continued the English common-law tradition of vesting the suspension power solely in the Legislative Branch. *See* Philip Hamburger, *Beyond Protection*, 109 COLUM. L. REV. 1823, 1919 (2009); Amanda L. Tyler, *Habeas Corpus in Wartime: From the Tower of London to Guantanamo Bay* (2017) (chronicling the original meaning of the Suspension Clause). The limited exception for the suspension of habeas corpus "in Cases of Rebellion or Invasion" when "the

public Safety may require it" proves the more general rule that duly enacted laws may not be suspended during an emergency that is neither a rebellion nor an invasion, even by Congress. U.S. Cont., art. I, § 9, cl. 2.

172.   And in contrast to the legislature's suspension authority, the executive "could not, even during an emergency, seize property" or "constrain the natural liberty of persons who were within the protection of the law, unless [the executive] had legislative authorization." Hamburger, *Beyond Protection*, 109 COLUM. L. REV. at 1919.

173.   CDC has not identified any act of Congress that delegated authority to impose an eviction moratorium across the United States. Section 264(a) authorizes CDC only to make and enforce regulations that "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."

174.   With no applicable grant of statutory authority to suspend laws, CDC has no authority to do anything with respect to the several states' comprehensive laws. *See Home Bldg & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 425 (1934) ("Emergency does not create power.  Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.").

175.   Because CDC could not lawfully waive the application of state laws governing evictions, the Order is void *ab initio* and must fail.

WHEREFORE, Plaintiffs demand judgment against CDC invalidating CDC's Eviction-Moratorium Order and any other relief that may be appropriate.

September 18, 2020

Respectfully,

*/s/ James W. Hawkins*
James W. Hawkins
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
5470 Blair Valley Run
Cumming, GA 30040
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*/s/ Caleb Kruckenberg*
**Caleb Kruckenberg**
Litigation Counsel
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
caleb.kruckenberg@ncla.legal
(202) 869-5210
*Admitted Pro Hac Vice*
*Counsel for Plaintiffs*